```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                    Plaintiff,              :     13 Civ. 4110 (KPF)
                                                            :
                        v.                                  :     OPINION AND ORDER
                                                            :
GEORGE MARTYNUK, et al.,                                    :
                                                            :
                                    Defendants.             :
                                                            :
------------------------------------------------------------X
```

<div style="float:right; border:1px solid black; padding:4px;">
USDC SDNY<br>
DOCUMENT<br>
ELECTRONICALLY FILED<br>
DOC #: _____<br>
DATE FILED: January 26, 2015
</div>

KATHERINE POLK FAILLA, District Judge:

  From 2002 through 2009, Defendants George Martynuk and Rosemary Martynuk (the "Martynuks"), a married couple, failed to pay the total amount of their tax liabilities.  The United States of America (the "Government") filed this action to reduce to judgment the tax assessments of the Internal Revenue Service (the "IRS"), and to foreclose federal tax liens against the Martynuks' property — namely, shares in a cooperative apartment building located on Manhattan's Upper East Side (the "Property").  Because there is no material dispute of fact regarding the Martynuks' tax liabilities or the validity of the tax liens, the Government's motion for summary judgment is granted.

**BACKGROUND**[1]

### A. Factual Background

The Martynuks are the owners of 595 shares of the capital stock of Guardsmans Tenants Corporation ("Guardsmans"). (Gov't 56.1 ¶ 1). These 595 shares represent the full ownership interest for Unit 3G (the "Apartment") in the cooperative apartment building located at 64 East 94th Street, New York, New York 10128. (*Id.* at ¶ 2). The Martynuks are the assignees of the proprietary lease for Unit 3G. (*Id.* at ¶ 3).

George Martynuk resides with his family in Greentown, Pennsylvania, on the weekends, and spends his weekdays in Manhattan. (Martynuk Decl. ¶¶ 3-5). While in Manhattan, he resides in and conducts his business from the Apartment. (*Id.* at ¶ 5). Martynuk relates that having an apartment in Manhattan is necessary because his work as an opera agent requires that he attend auditions, performances, and receptions, and stay in close contact with opera houses. (*Id.* at ¶ 6). Because he often meets with singers and attends

---

[1]  The facts set forth herein are drawn from Government's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Gov't 56.1"); Defendants' Response to Government's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1"); the Declarations of George M. Martynuk and Stephen J. Dunn in Opposition to Government's Motion for Summary Judgment ("Martynuk Decl." and "Dunn Decl."); and the Declarations of Revenue Officer Spencer Gould in Support of Government's Motion for Summary Judgment ("Gould Decl." and "Supp. Gould Decl.") and the exhibits attached thereto (citations to these exhibits are made using the pagination imposed by the Court's electronic case filing ("ECF") system). For convenience, the Government's opening brief is referred to as "Gov't Br.," Defendants' opposition brief as "Def. Opp.," and the Government's reply brief as "Gov't Reply."

Citations to a party's Local Civil Rule 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's Local Civil Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c)-(d).

rehearsals late into the night, he could not maintain his current business from his family home in Pennsylvania. (*Id.*).

The IRS made assessments jointly and severally against the Martynuks for deficiencies in the payment of federal income taxes for the each of the taxable years from 2002 through 2009 (the "Tax Years"). (Gov't 56.1 ¶ 4; Gould Decl. ¶¶ 2-10 & Ex. 1). The deficiency assessments for the Tax Years are based on income that was self-reported by the Martynuks on their federal income tax returns for the Tax Years. (Gov't 56.1 ¶ 5). Interest and penalties have continued to accrue over time with respect to the Martynuks' joint and several tax liabilities for the Tax Years. (*Id.* at ¶ 27).

The Martynuks have suffered personal and professional setbacks that have purportedly prevented them from paying their taxes liabilities in full. (*See* Martynuk Decl. ¶¶ 9-10). Rosemary Martynuk, once an opera singer, was injured in a car accident in 2006. (*Id.* at ¶ 8). The injuries from the accident ended her career as a singer, and resulted in "staggering" medical bills, which the Martynuks paid off at the expense of the IRS and other creditors. (*See id.* at ¶¶ 8, 12). George Martynuk's business has suffered from the closing of many opera houses in recent years, which unsurprisingly makes his representation of opera singers less profitable. (*See id.* at ¶ 9). Additionally, one of his "premier" clients — opera tenor Jerry Hadley — committed suicide in 2008. (*Id.*). Finally, the Martynuks' attempt to resolve their tax liabilities was impeded when, in 2011, they hired a tax resolution firm called "Tax Tiger,"

which reportedly took a $2,500 retainer from the Martynuks but did nothing to resolve or settle the Martynuks' liabilities. (*Id.* at ¶¶ 10-11).

The IRS has made numerous attempts to collect the taxes owed by the Martynuks for the Tax Years, but has been unable to collect from the Martynuks the full amount of their federal tax liabilities. (Gov't 56.1 ¶ 26). Efforts to collect the unpaid assessments have included: (i) service of notice and demand, in accordance with 26 U.S.C. § 6303; (ii) issuance of notices of intent to levy, pursuant to 26 U.S.C. § 6320; (iii) issuance of multiple levies to banks and other income sources, which yielded little or no results; and (iv) multiple telephone and written contacts to attempt to bring the Martynuks into compliance. (Gould Decl. ¶ 24).

The IRS examined all of the assets belonging to the Martynuks for collection potential. (Gould Decl. ¶ 25). Based on this examination, including the review of financial statements submitted by the Martynuks, the IRS determined that the Martynuks' interest in the Property offered the only means of recovering the delinquent taxes. (*Id.*). To that end, the IRS has recorded Notices of Federal Tax Lien ("NFTLs") in New York County, New York, against the Martynuks for deficiencies in payment of their federal tax liabilities for each of the Tax Years. (Gov't 56.1 ¶¶ 30-38).

As of March 31, 2014, the Martynuks' joint and several income tax liabilities for the Tax Years is $394,759.92, a figure that includes unpaid federal taxes, interest, penalties, and other additions. (Gov't 56.1 ¶ 28).

Interest will continue to accrue on these amounts until the liabilities are satisfied or until the penalties reach the maximum accrual total. (*Id.* at ¶ 29).

The Martynuks have proposed an installment agreement, which would require them to pay $500 to the IRS per month. (Dunn Decl. ¶ 3; *see also* Martynuk Decl. ¶¶ 16-17). The IRS rejected this proposal because, *inter alia*, the Martynuks' financial statements did not indicate an ability to make such payments; the Martynuks had failed to make estimated tax payments for 2013 or the first quarter of 2014; and the Martynuks were not eligible for an installment agreement under IRS rules because they have an asset — the Property — that can be liquidated to satisfy (at least in part) their obligations. (Supp. Gould Decl. ¶¶ 4-9; *see also* Dunn Decl. ¶¶ 2-11).

**B.     Procedural Background**

The Government commenced this action on June 13, 2013, by filing a Complaint. (Dkt. #1 ("Compl.")). The Complaint named, as Defendants, the Martynuks, Self Reliance (New York) Federal Credit Union (the "Credit Union"), Guardsmans, and John Does 1-10 — parties the Government believes may have, or may claim to have, interest in the sale of the Property. (Compl. ¶¶ 5-9). The Government filed an amended complaint on December 12, 2013, to add Capital One Bank ("Capital One") as a Defendant. (*See* Dkt. #28 (Amended Complaint) ¶ 9).

The Martynuks initially proceeded *pro se*, but retained counsel in late 2013. They appeared through counsel at a pretrial conference on November 12, 2013. (*See* Dkt. #21, 26). During the conference, the Martynuks argued

5

that the IRS was required, but had failed, to exhaust reasonable collection alternatives before initiating an administrative levy on or lien foreclosure proceeding with respect to the Martynuks' primary residence. (*See* Dkt. #26). The Court requested and received additional briefing on this issue from the parties. (Dkt. #26, 27, 37, 38). On February 18, 2014, the Court heard oral argument from the parties to resolve this issue. (*See* February 18, 2014 Conference Transcript ("Feb. 18 Tr.")) (Dkt. #50).

During oral argument and in its briefing, the Government argued that, whatever the requirements were in the context of an administrative levy of real property, the Government was not required to demonstrate the exhaustion of reasonable alternatives in the context of a lien foreclosure proceeding. (*See* Dkt. #37 at 6; Feb. 18 Tr. 8-9). The Martynuks argued that the exhaustion requirement applies equally to levies and liens because, *inter alia*, Congress "didn't want to make a taxpayer homeless unless reasonable collection alternatives had been exhausted. And you can make a taxpayer homeless through a lien foreclosure proceeding." (Feb. 18 Tr. 5; *see also* Dkt. #27 at 4; Dkt. #38 at 3). Upon consideration of the parties' arguments, the Court rendered an oral decision. (Feb. 18 Tr. 18). Specifically, the Court took guidance from Supreme Court's decision in *United States* v. *Rodgers*, 461 U.S. 677 (1983), which "ma[de] very clear that there is a difference between lien proceedings and administrative levy proceedings." (*Id.*). The Court found that the requirement of exhausting reasonable alternatives did not apply to lien foreclosure proceedings because: (i) it was not clear that the legislation cited

6

by the Martynuks "was designed to provide or to be equally applicable to liens and administrative levy proceedings"; and (ii) unlike in the context of an administrative levy, "there seems to be built into the lien foreclosure a process that must be assured, lest someone ... try and place an administrative lien against someone's property." (*Id.*).

At the close of discovery, the Court held a pre-motion conference to discuss the Government's anticipated motion for summary judgment. (Dkt. #64). The Government's motion for summary judgment was filed on May 22, 2014 (Dkt. #59); Plaintiff's opposition was filed on June 23, 2014 (Dkt. #66); and the motion was fully briefed as of the filing of the Government's reply on July 7, 2014 (Dkt. #67). The Court now considers the Government's motion.

## DISCUSSION

### A. The Standard for Summary Judgment Motions

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also*

*Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166

(2d Cir. 2010)) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted); *see also Vargas* v. *Transeau*, 514 F. Supp. 2d 439, 442 (S.D.N.Y. 2007) (observing that "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary judgment (internal quotation marks and citations omitted)), *aff'd sub nom. Vargas* v. *Pfizer, Inc.*, 352 F. App'x 458 (2d Cir. 2009) (summary order).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

**B.    Analysis**

    **1.    The Tax Assessments Are Valid and Shall Be Reduced to a Judgment**

"The district courts of the United States at the instance of the United States shall have such jurisdiction ... to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Accordingly, "[i]f a taxpayer is liable to the IRS, the Government may proceed in district court to obtain a judgment for the amount assessed against the taxpayer." *United States* v. *Sweeny*, 418 F. Supp. 2d 492, 496 (S.D.N.Y. 2006) (citing 26 U.S.C. § 7402(a)). "It is well established that the IRS's tax calculations (including calculations of interest and penalties) are

presumptively valid and create a *prima facie* case of liability, such that the Government is entitled to have the assessment reduced to judgment unless the taxpayer overcomes the presumption by the IRS that the assessment is correct." *United States* v. *Chrein*, 368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005) (internal citation omitted). "[T]he burden is on the taxpayer to prove [an assessment's] invalidity." *Pizzarello* v. *United States*, 408 F.2d 579, 583 (2d Cir. 1969) (citations omitted); *accord United States* v. *Deville*, No. 06 Civ. 2781 (AKH), 2007 WL 2119865, at *2 (S.D.N.Y. July 23, 2007); *Sweeny*, 418 F. Supp. 2d at 496. Additionally, "[t]o defeat a motion for summary judgment, the taxpayer must not only show that the assessment is incorrect, but it must also prove the correct amount of the tax." *Chariot Plastics, Inc.* v. *United States*, 28 F. Supp. 2d 874, 882 (S.D.N.Y. 1998) (citing, *inter alia*, *United States* v. *Janis*, 428 U.S. 433, 440-41 (1976)).

Here, the Government has supplied a Form 4340 for each of the Tax Years, which indicates that IRS assessments were in fact made, and account transcripts that show the Martynuks' balance of tax liabilities (including penalties and interest) updated as of March 31, 2014. (*See* Gould Decl., Ex. 1, 3). *See also McLaine* v. *Comm'r*, 138 T.C. 228, 241 (2012) ("[I]t is well established that a Form 4340 or a computer printout of a taxpayer's transcript of account, absent a showing of irregularity, provides sufficient verification of the taxpayer's outstanding liability[.]"); *Davis* v. *Comm'r*, 115 T.C. 35, 40 (2000) ("Generally, courts have held that Form 4340 provides at least presumptive

evidence that a tax has been validly assessed[.]"). The Martynuks have not overcome the presumption that these assessments are correct.

The Martynuks' only argument with respect to the Government's assessment of liabilities is that the Government has failed to meet its burden of production with respect to penalties calculated pursuant to 26 U.S.C. § 6651(a)(1) (late filing penalty), § 6651(a)(2) (late payment penalty), and § 6654 (penalty for underpayment of estimated tax). (Def. Opp. 14-17). The Martynuks argue that "the Court should not sustain the penalties alleged by the Government" because "the Government had to produce the tax returns showing the tax upon which the penalties are allegedly based." (Def. Opp. 17). The Government argues (Gov't Reply 2-6), and the Court agrees, that the requirement to produce tax returns underlying the assessments does not exist.

The Government "ha[s] the burden of production ... with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed[.]" 26 U.S.C. § 7491(c). The Government may satisfy this burden, as it has done here, by "com[ing] forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." *Higbee* v. *Comm'r*, 116 T.C. 438, 446 (2001). A Form 4340 can constitute sufficient evidence with respect to each of the statutory penalties assessed here. *See Cobaugh* v. *Comm'r*, 96 T.C.M. (CCH) 108, 2008 WL 3914929, at *3 (2008) ("The Forms 4340 are sufficient to satisfy respondent's burden of production under section 7491(c) with respect to the additions to tax under section 6651(a)(1)."); *Guterman* v. *Comm'r*, 96 T.C.M. (CCH) 457, 2008 WL 5245824, at *4 (2008) ("[The

11

Government] has met the burden of production with respect to the section 6651(a)(2) addition to tax by presenting a Form 4340[.]"); *see also Harris* v. *Comm'r*, 104 T.C.M. (CCH) 554, 2012 WL 5447262, at *6 (2012) (finding Form 4340 sufficient to establish penalty under § 6654).[2]  By providing Forms 4340 for each of the Tax Years, the Government has met its burden of production.[3]

In sum, there are no genuine issues of material fact that would preclude summary judgment.  The Martynuks owe a total of $394,759.92 in unpaid taxes, interest, and penalties for the Tax Years, with interest continuing to accrue until the obligations are made.  A judgment for the Government will be entered accordingly.

---

[2]  The Court notes that the Government has not assessed a penalty for underpayment of estimated tax, under 26 U.S.C. § 6654, for Tax Year 2002, which would have required it to produce a Form 4340 or similar evidence showing the Martynuks' taxable income in 2001.  (*See* Gov't Reply 5 & n.2).

[3]  The Court agrees with the Government (*see* Gov't Reply 4) that many of the cases cited by the Martynuks are inapposite because they concern the burden of production where the taxpayers have *not* filed their own tax returns.  (*See* Def. Opp. 16-17 (citing, *inter alia*, *Wheeler* v. *Comm'r*, 446 F. App'x 951 (10th Cir. 2011) (non-binding summary order); *Brooks* v. *Comm'r*, 93 T.C.M. (CCH) 1078 (2007); *Lewis* v. *Comm'r*, 93 T.C.M. (CCH) 934 (2007), *aff'd*, 523 F.3d 1272 (10th Cir. 2008))).  Under such circumstances, the IRS typically creates a "substitute for return" ("SFR"), which must comply with 26 U.S.C. § 6020(b).  Whether the Government has the burden of producing SFRs, or evidence of SFRs, to sustain penalties assessed is not relevant to the instant action, where the Martynuks have filed their own tax returns for the Tax Years.  (*See* Gould ¶ 12).  *Cf. Wheeler* v. *Comm'r*, 127 T.C. 200, 210 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008) ("The Commissioner's burden of production ... requires that the Commissioner introduce evidence that a return showing the taxpayer's tax liability was filed for the year in question.  *In a case such as this where the taxpayer did not file a return*, the Commissioner must introduce evidence that an SFR satisfying the requirements of section 6020(b) was made." (emphasis added)).

## 2.    The Tax Liens Are Valid and Perfected

Next, the Court must consider whether the Government's tax liens are valid and, if so, whether they have been perfected. Section 6321 of the Internal Revenue Code provides that

> [i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. "The language of section 6321 is broad, revealing a congressional intent to reach 'every interest in property that a taxpayer might have.'" *Don King Prods., Inc.* v. *Thomas*, 945 F.2d 529, 533 (2d Cir. 1991) (quoting *United States* v. *Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985)). Under New York law, a taxpayer's interests in the stock certificate of a cooperative apartment and the proprietary lease granted by the corporation constitute "property" or "rights to property." *United States* v. *Rozbruch*, No. 11 Civ. 6965 (GWG), 2014 WL 3036398, at *10 (S.D.N.Y. July 7, 2014) (citations omitted); *Dewees Mellor, Inc.* v. *Weise*, No. 91 Civ. 2518 (ERK), 1993 WL 591608, at *5 (E.D.N.Y. Dec. 29, 1993) ("[A] tenant's interest in a cooperative apartment is a unique hybrid of an interest in realty and personal property, and is for many purposes treated as an interest in real property." (citing *State Tax Comm'n* v. *Shor*, 43 N.Y.2d 151, 154 (1977))).

A federal tax lien "is deemed to arise at the time that the assessment is made and continues until the amount of liability set forth in the assessment is satisfied." *United States* v. *McCombs*, 30 F.3d 310, 321 (2d Cir. 1994) (citing

13

26 U.S.C. § 6322).  However, a lien "imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest … or judgment lien creditor until [a] notice [of the federal tax lien] has been filed[.]"  *Don King Prods.*, 945 F.2d at 532-33 (quoting 26 U.S.C. § 6323(a)); *see also* 26 U.S.C. § 6323(f) (establishing requirements for such notice).

Here, the IRS made assessments against the Martynuks on March 29, 2010, September 6, 2010, December 27, 2010, March 7, 2011, July 4, 2011, and August 8, 2011.  (Gould Decl. ¶ 11).  The Government perfected its interest in the Property by filing NFTLs corresponding to each of the Tax Years in New York County, New York.  (*See* Gould Decl. ¶¶ 13-21).  The Martynuks do not contest that the IRS made these assessments for deficiencies, nor do they contest that they failed to satisfy their tax obligations.  Furthermore, the Martynuks do not contest the fact that the liens attach to the Property, or that the Government, by filing NFTLs, perfected its interest in the Property.  Accordingly, the Court finds the Government's liens to be valid and perfected.

    **3.**    **The Tax Liens Shall Be Foreclosed by a Sale of the Property**

Having determined that the Government is entitled to a judgment against the Martynuks, that it possesses valid tax liens, and that it has perfected its interest in the Property, the Court must now decide whether to authorize a foreclosure by sale of the Property.  The Martynuks challenge the sale of the Property on two grounds.  First, they argue that the IRS has failed to exhaust reasonable alternatives before instituting a lien foreclosure proceeding on their primary residence (Def. Opp. 12-13); second, they argue that the Court should

exercise its discretion not to order a sale of the Property (*id.* at 6-7).  The Government counters that the consideration of reasonable alternatives is irrelevant to the analysis (Gov't Reply 6-8), and that it would be inappropriate for the Court to exercise discretion and decline to order a sale in the face of the Martynuks' egregious delinquency (*id.* at 8-10).  As to both issues, the Government is correct.

Pursuant to 26 U.S.C. § 7403(a),

> [i]n any case where there has been a refusal or neglect to pay any tax … the Attorney General or his delegate … may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States … with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent … to the payment of such tax or liability.

26 U.S.C. § 7403(a).  "The court … may decree a sale of such property … and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."  *Id.* § 7403(c); *accord Rodgers*, 461 U.S. at 680 ("Section 7403 … authorizes the judicial sale of certain properties to satisfy the tax indebtedness of delinquent taxpayers.").

For starters, the Martynuks' argument that the IRS has failed to exhaust reasonable alternatives before foreclosing on their primary residence has already been rejected by this Court, following exhaustive briefing and oral argument on this issue.  *See* Background Sec. B, *supra*.  *See also United States v. Gilbert*, No. 93-16113, 1995 WL 74771, at *2 (9th Cir. 1995) ("Those sections apply to protect a taxpayer from a direct levy by the IRS, not from a judicial

15

foreclosure suit pursuant to 26 U.S.C. § 7403."); *United States* v. *Campbell*, No. 11 Civ. 2826 (MCE) (EFB), 2013 WL 3490740, at \*10 (E.D. Cal. July 10, 2013) ("Because this is a lien foreclosure action under § 7403, the procedures … are not applicable, including the requirement that the Government provide evidence that no reasonable alternative for the collection of the taxpayer's debt exists."), *report and recommendation adopted*, 2013 WL 4433385 (E.D. Cal. Aug. 16, 2013); *United States* v. *Crossen*, No. 08 Civ. 12082 (GAO), 2010 WL 3191457, at \*4 (D. Mass. Aug. 12, 2010) ("[The] principal residence exemption applies only to administrative levies, not judicial foreclosure actions."); *United States* v. *Meisner*, No. 05 Civ. 100 (DLP), 2007 WL 1290088, at \*11 (D. Neb. May 2, 2007) (explaining that "the consideration of alternative collection methods … is inapplicable to this proceeding under … § 7403"). Nothing in the Martynuks' brief compels the Court to revisit this issue.[4]

Assuming *arguendo* that the IRS was required to pursue reasonable collection alternatives, it is evident that reasonable collection alternatives

---

[4] Although not relevant to the Court's decision, the tension inherent in the Martynuks' argument is worth mentioning briefly. The Martynuks' primary argument against foreclosing on their "principal residence" has been that "Congress … didn't want to make a taxpayer homeless unless reasonable collection alternatives had been exhausted. And you can make a taxpayer homeless through a lien foreclosure proceeding." (Feb. 18 Tr. 5). But here, the Government will not make taxpayers homeless as a result of the lien foreclosure. The Martynuks have a home in Pennsylvania. (*See* Martynuk Decl. ¶ 4 (describing this residence as "our family home")). While it may be true that George Martynuk resides — more often than not — in the Apartment, his reason for doing so is to sustain his business contacts. (*See id.* at ¶¶ 6-7). While foreclosing on property used for business purposes has serious consequences, the consequences do not parallel the concern (i.e., homelessness) that animates the Martynuks' argument.

would not be available here.  (*See* Gould Decl. ¶ 24 ("[The] issuance of multiple levies to banks and other sources … yielded little or no results."); *id.* at ¶ 25 ("[T]he IRS examined all of the assets belonging to the Martynuks for collection potential.  Based on this examination, it became clear that the Martynuks' reported interest in [the Property] offered the only means of recovering delinquent taxes."); Supp. Gould Decl. ¶ 4 ("[T]he Martynuks' financial statement did not indicate that they would be able to make [the proposed] monthly payments.").[5]

The Martynuks' next argument is that the Court should exercise its discretion to decline to order a sale of the Property.  (Def. Opp. 7 (citing *Rodgers*, 461 U.S. at 705-06)).  Yet *Rodgers*, the Supreme Court case the Martynuks cite to support the exercise of discretion, persuades this Court that

---

[5]  During briefing and oral argument on this issue, the parties discussed *United States* v. *Maris*, No. 10 Civ. 1337 (RCJ), 2012 WL 359878 (D. Nev. Feb. 2, 2012), a case in which a district court denied the Government's request to foreclose on tax liens because it had not demonstrated an exhaustion of reasonable alternatives.  (*See, e.g.*, Dkt. #27 at 3-4; Feb. 18 Tr. 16).  This Court declined to follow the reasoning of *Maris* in its oral decision of February 18, 2014.  (*See* Feb. 18 Tr. 18 ("[T]here is a difference between lien proceedings and administrative levy proceedings.")).  It is worth noting, however, that in *Maris* — unlike in the instant action — "the government … presented no evidence that it [wa]s necessary to foreclose on Defendants' primary residence to collect the debt or that there [we]re no other assets that could be used to satisfy Defendants' tax liability." *Maris*, 2012 WL 359878, at *7.  Here, although there is no requirement to do so, the Government has presented such evidence.  That is to say, if the Government had proceeded by way of an administrative levy, there is every indication that this Court would have approved the levy.  (*See* Feb. 18 Tr. 11 ("It's worth pointing out, your Honor, even if this were an administrative levy proceeding and we were going through that sequence of steps, it's not as though the government can't under any circumstances levy on a principal residence.  It can.  It can only do so with judicial approval.  In a lot of ways it sort of collapses into the same outcome here with the exception that under the administrative levy proceedings there are additional showings that the government must make about whether other alternatives are available. The government is not cutting off any discussion of a potential offer and compromise if Mr. Martynuk could come forward with that.  We don't believe that he can.")).

any such exercise would be wholly imprudent.  The Supreme Court "emphasize[d] … that the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 461 U.S. at 711.  Moreover, the Court anticipated "virtually no circumstances … in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself." *Id.* at 709.

      This Court is sympathetic to the personal and professional setbacks that have befallen the Martynuks since 2006; however, even reasonable and significant excuses beginning in 2006 can offer no insight into (much less justification for) the Martynuks' failure to file taxes in the Tax Years preceding these events.  In sum, the Martynuks' interest in retaining the Property does not outweigh the Government's "paramount interest in prompt and certain collection of delinquent taxes," *Rodgers*, 461 U.S. at 711, and thus the foreclosure and sale of the Property pursuant to § 7403 will be authorized. *See, e.g., United States* v. *Evseroff*, No. 00 Civ. 6029 (KAM), 2014 WL 202563, at *6 (E.D.N.Y. Jan. 16, 2014) (declining to exercise discretion under § 7403 to stay appointment of receiver until defendant no longer resided in primary residence).

## CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment is GRANTED in its entirety. The Clerk of Court is directed to terminate Docket Entry 59.

It is further ORDERED that the Clerk of Court shall enter judgment for Plaintiff against the Martynuk Defendants, jointly and severally, for $394,759.92 in unpaid income tax liabilities as of March 31, 2014, with interest and additions continuing to accrue thereon until the judgment is satisfied.

The Government is authorized to foreclose its tax liens on the Martynuk Defendants' interest in the Property, and the Court directs that the Property be sold pursuant to a further order of sale to be issued by this Court.

To that end, the Government shall file a post-judgment motion for an order of sale, attaching as an exhibit a proposed order, by **March 2, 2015**; any opposition to the motion shall be filed by **March 16, 2015**.

If the parties having liens upon the Property are unable to resolve any remaining disputes about the priority of their respective liens, they shall promptly notify the Court by letter — prior to **March 2, 2015** — and propose a briefing schedule for motion practice, which will resolve the outstanding issues in this case.

SO ORDERED.

Dated:    January 26, 2015
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge